UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHIJIOKE BOMANI BEN-YISRAYL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-661-TWP-MJD |
| | ) | |
| BILL WILSON, | ) | |
| | ) | |
| Respondent. | ) | |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

This matter is before the Court on a Petition for Writ of Habeas Corpus filed by Petitioner
Chijioke Bomani Ben-Yisrayl ("Ben-Yisrayl"). (Filing No. 1). In 1984 Ben-Yisrayl was convicted
of murder and other serious felonies, following a jury trial in an Indiana state court. He is currently
serving an aggregate one-hundred-and-fifty year sentence for these crimes. The Court stayed this
action for two years pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005)[1], so that Ben-Yisrayl could
complete his post-conviction proceedings in the state courts. Following numerous state court
proceedings, Ben-Yisrayl's petition is now ripe for decision and the stay has been terminated.

For the reasons explained in this Entry, the Petition for a Writ of Habeas Corpus is
**DENIED** and the action dismissed with prejudice. In addition, the Court finds that a certificate of
appealability should not issue.

---

[1] In *Rhines*, the Supreme Court held a federal habeas court should stay and hold in abeyance a federal habeas corpus
proceeding where the petitioner has asserted both exhausted and unexhausted claims so as to permit the petitioner to
return to state court to exhaust available state remedies on his unexhausted claims where (1) the petitioner has good
cause for his failure to exhaust, (2) his unexhausted claims are potentially meritorious, and (3) there is no indication
the petitioner engaged in intentionally dilatory litigation tactics. *Rhines v. Weber*, 544 U.S. at 278, 125 S.Ct. at 1535.

# I. BACKGROUND

## A.    Procedural Background

Following a jury trial, Ben-Yisrayl was found guilty of murder, rape, burglary, and criminal confinement.  The trial court sentenced him to death.  His convictions and sentence were upheld by the Indiana Supreme Court.  *See Davis v. State*, 598 N.E.2d 1041 (Ind. 1992) ("*Ben-Yisrayl I*").  Following this, the denial of post-conviction relief was affirmed by the Indiana Supreme Court in all respects except that Ben-Yisrayl's death sentence was vacated, and the case was remanded for a new penalty-phase proceeding.  *See Ben-Yisrayl v. State*, 738 N.E.2d 253 (Ind. 2000) ("*Ben-Yisrayl II*").[2]  On remand, the trial court held that Indiana's death penalty statute was unconstitutional, but the Indiana Supreme Court reversed that decision in *State v. Ben-Yisrayl*, 809 N.E.2d 309 (Ind. 2004) ("*Ben-Yisrayl III*").

The State subsequently dismissed its request for the death penalty.  Ben-Yisrayl was sentenced, but that sentence was partially reversed by the Indiana Court of Appeals in *Ben-Yisrayl v. State*, 908 N.E.2d 1223 (Ind. Ct. App. 2009) ("*Ben-Yisrayl IV*").  Upon remand he received an aggregate one-hundred-and-fifty-year sentence.  The sentence was upheld by the Indiana Court of Appeals in *Ben-Yisrayl v. State*, 939 N.E.2d 130, 2010 WL 5135369 (Ind. Ct. App. 2010) ("*Ben-Yisrayl V*"), and the Indiana Supreme Court denied transfer on February 17, 2011.

On September 20, 2011, Ben-Yisrayl filed a successive post-conviction petition in the state trial court, asserting claims not previously raised.  That petition remained pending on May 16, 2012, when Ben-Yisrayl filed the instant petition for a writ of habeas corpus with this Court.  He moved to stay the instant case pursuant to *Rhines* 544 U.S. 269 (2005) so that he could attempt to

---

[2] Mr. Ben-Yisrayl was formerly known as Greagree Davis.  *See Ben-Yisrayl II*, 738 N.E.2d at 257.

exhaust the claims raised in his successive post-conviction petition. The Court granted his motion to stay, and, as noted, the case was stayed for approximately two years while Ben-Yisrayl completed his state court proceedings.

Ben-Yisrayl filed his application for authorization to file a successive post-conviction petition with the Indiana Court of Appeals on November 1, 2013. On January 10, 2014, the Indiana Court of Appeals held that Ben-Yisrayl failed to establish that there was a reasonable probability that he is entitled to post-conviction relief and therefore declined to authorize the filing of a successive post-conviction petition. His pending post-conviction petition was thereupon dismissed by the trial court. On April 23, 2015, the Indiana Supreme Court denied Ben-Yisrayl's petition to transfer the Indiana Court of Appeals' decision dismissing his appeal of his successive post-conviction petition. This was the conclusion of proceedings in state court and opened the door for development of the pending habeas petition in this Court. Briefing closed for this action on September 3, 2015.

**B.    Factual Background**

The factual background supporting Ben-Yisrayl's convictions was summarized by the Indiana Supreme Court in *Ben-Yisrayl I* as follows:

> The defendant was acquainted with the victim's former roommate and had visited the victim's residence on many occasions during the summer of 1983. The defendant told the roommate several times of his sexual interest in the victim. About 7:00 p.m. on April 2, 1984, the defendant knocked on the door of the victim's neighbors, asking them whether the victim lived there, and was told that that she did not. The defendant then left. Sometime after 9:00 p.m., the victim arrived home and telephoned her brother. She told him that someone had broken into her residence through a back window and had removed all the light bulbs. The victim believed that the intruder might still be present. Her brother told her to leave immediately, and assumed that she would come to his residence. When she failed to arrive as he expected, he reported the incident to the police. The responding officer did not find the victim at her residence, but found a broken window. Later investigations discovered the keys to her new car on the porch and the missing light bulbs in a waste paper basket.

3

On April 4, a police officer found the gagged and substantially disrobed body of the victim at the top of a ramp under a bridge near her residence. An autopsy revealed chipped teeth; broken fingernails; abrasions on the hands, chin, and knees; multiple bruises to the lips and gums; and 113 stab or puncture wounds. The stab wounds were caused by two different knives. The victim's neck evidenced manual strangulation. Seminal fluid was found in her vaginal cavity. The cause of her death was determined to be multiple stab wounds to the chest and abdomen.

The defendant told police investigators that he broke the back window of the victim's home, entered it, unscrewed the light bulbs, waited, and hid behind a door when she returned home and made a phone call. When she walked towards the door, he got behind her. With the victim's hands tied in front of her, he took her to nearby railroad tracks, under a bridge, and up a slope. At some point he gagged her. The defendant told police that he stabbed her. He described the disposal of the knife, and took police to the creek where he had dropped it while trying to wash it off. Two knives were discovered at this location. One was the victim's pastry knife and the other was a chef's knife from the victim's kitchen knife set. The defendant also admitted taking the victim's watch and later selling it.

Serological analysis of blood and seminal fluid obtained from the victim indicated characteristics representing less than one percent of the general population. The defendant's blood test results placed him within this category.

*Ben-Yisrayl I*, 598 N.E.2d at 1045.

## II. <u>APPLICABLE LAW</u>

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). Ben-Yisrayl filed his 28 U.S.C. § 2254 petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). His petition, therefore, is subject to AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). As discussed further below, the two remaining claims from Ben-Yisrayl's habeas petitions were not adjudicated on the merits by the state courts, and thus they are subject to *de novo* review. *See Pruitt v. Neal*, 788 F.3d 248, 263 (7th Cir. 2015) ("If no state court has squarely addressed the merits of a habeas claim, [the Court] review[s] the claim *de novo* under the pre-AEDPA standard of 28 U.S.C. § 2243.").

In addition to the foregoing substantive standard, "federal courts will not review a habeas petition unless the prisoner has fairly presented his claims 'throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings.'" *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015) (quoting *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014), and citing 28 U.S.C. § 2254(b)(1)); *see also Anderson v. Benik,* 471 F.3d 811, 814-15 (7th Cir. 2006) ("To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts.") (internal quotation marks and citation omitted); *Thomas v. McCaughtry,* 201 F.3d 995, 999 (7th Cir. 2000) ("A state prisoner … may obtain federal habeas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim.").

Insofar as pertinent here, procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992). A federal claim is not fairly presented unless the petitioner "put[s] forward operative facts and controlling legal principles." *Simpson v. Battaglia*, 458 F.3d 585, 594 (7th Cir. 2006) (citation and quotation marks omitted). "A federal court may excuse a procedural default if the habeas petitioner establishes that (1) there was good cause for the default and consequent prejudice, or (2) a fundamental miscarriage of justice would result if the defaulted claim is not heard." *Johnson*, 786 F.3d at 505.

## III. <u>DISCUSSION</u>

Ben-Yisrayl raises six claims in his petition for a writ of habeas corpus, four of which, as discussed further below, he subsequently abandoned. The Court first discusses the briefing of Ben-Yisrayl's habeas petition before addressing the two remaining grounds for habeas relief in

turn.

**A.      <u>Briefing the Habeas Petition</u>**

When the Court terminated the stay and ordered the respondent to show cause why the relief requested in Ben-Yisrayl's habeas petition should not be granted, the Court had informed the parties that it did not anticipate extending the briefing deadlines in this case, given that the case had been stayed for two years at Ben-Yisrayl's request.  On the date Ben-Yisrayl's reply brief was due, he requested through his attorney a thirty-day extension of time, until August 21, 2015, to file his reply brief.  The Court had already provided the respondent with a single extension of time, thus the Court granted Ben-Yisrayl an extension as well, but clearly stated that no further extensions of time would be given.  Nevertheless, again on the date his reply brief was due, Ben-Yisrayl filed an emergency motion for an extension of time in which to file his reply brief, explaining that extenuating circumstances arose that were out of his control and that prevented his attorney from timely filing the brief.  The Court granted Ben-Yisrayl's requested seven-day extension, until August 28, 2015, but in doing so stated that if his "reply brief is not filed by the [set] deadline, the right to file a reply brief will be forfeited and any belatedly filed reply brief will not be considered by the Court."  (Filing No. 48 at 1.)  The deadline for Ben-Yisrayl to file a reply brief passed, and he did not file a reply brief or any other pleading.

The Court waited six days after Ben-Yisrayl's deadline before issuing an order, dated September 3, 2015, stating what the Court already had made clear would be the consequences of failing to meet the Court's deadline—namely, that Ben-Yisrayl forfeited the right to file a reply brief, that briefing for the matter was closed, and that the Court would decide his petition for habeas corpus is due course.  Another five days passed before Ben-Yisrayl filed a motion on September 8, 2015, seeking leave to file a belated reply brief.  In his motion, he explains that his counsel

endured certain personal difficulties that made him "literally incapable of writing anything" for a ten-day period—from August 25 to September 4, 2015.  (Filing No. 50 at 1.)

Given the foregoing, Ben-Yisrayl's motion for leave to file a reply brief must be denied. "We live in a world of deadlines. . . .  A good judge sets deadlines, and the judge has a right to assume that deadlines will be honored." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996).  The rules regarding deadlines "are intended to force parties and their attorneys to be diligent in prosecuting their causes of action." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 607 (7th Cir. 2006) (citation and quotation marks omitted).

Ben-Yisrayl's counsel has fallen well short of the ideal—and minimum—diligence in prosecuting this action.  As detailed above, Ben-Yisrayl requested an extension after the Court warned him that it was unlikely to grant one, and then he requested another emergency extension after the Court explicitly told him no more would be given; both of these requests were made on the day the reply brief was due.  The Court reluctantly granted those motions, but stated in no uncertain terms that the final extension was just that—final.  Instead of filing another motion for an extension of time, he simply failed to file anything until September 8, 2015, which was eleven days after the deadline.  If waiting "until the last minute to comply with a deadline" is "playing with fire," *Spears*, 74 F.3d at 157, repeatedly waiting until the last minute to request extensions and then missing the twice-extended deadline by eleven days is inexcusable.

The Court is not unsympathetic with whatever personal calamities befell Ben-Yisrayl's counsel that prevented him from writing for ten days.  But even if this were accepted as a justifiable excuse, the ten-day period where he was unable to work on the brief ended on September 4, 2015, yet the instant motion was not filed until four days later.  If Ben-Yisrayl's counsel was acting with diligence, a motion would have been filed immediately explaining to the Court what occurred and

why he was unable to meet the Court's deadline. And if he "literally was unable to write," counsel could have contacted the Courtroom Deputy Clerk by telephone to give notice of a "calamity" and request advice on how to proceed. This did not occur, and thus these are not circumstances in which the Court should overlook a party's failure to meet the twice-extended deadline.

The consequences for missing deadlines can often be harsh. *Cf. Johnson v. McBride*, 381 F.3d 587, 591 (7th Cir. 2004) (holding that a petitioner's petition for habeas corpus in a death penalty case is time-barred because it was filed one day late). But the Seventh Circuit has made clear that even in such instances, a district court is well-within its discretion "to require adherence to a deadline that it had previously informed counsel it would not extend." *Yancick v. Hanna Steep Corp.*, 653 F.3d 532, 539 (7th Cir. 2011). The Supreme Court has emphasized that habeas corpus proceedings are intended to provide "swift, flexible, and summary determination[s]." *Browder v. Director, Dept. of Corrections*, 434 U.S. 257, 271 (1978). This was the Court's goal when informing the parties at the outset that extensions of time were not anticipated; after all, the tortured procedural history reveals that litigation over Ben-Yisrayl's convictions has been ongoing for over three decades. The Court nevertheless granted Ben-Yisrayl two extensions, all for him to not file his reply brief until eleven days after the final deadline. If the Court allowed Ben-Yisrayl "to continually ignore deadlines and seek neverending extensions without consequence, soon the court's scheduling orders would become meaningless." *Spears*, 74 F.3d at 158. The Court cannot allow this to occur. Accordingly, the Court will not alter its previous decision that briefing for this matter is closed, and therefore will not consider the arguments set forth in Ben-Yisrayl's proposed reply brief. *See Land v. Int'l Busi. Machines, Inc.*, 485 Fed. Appx. 830, 833 (7th Cir. 2012) (affirming the district court's decision to strike an untimely response brief due to the filing party's "pattern of delays" and missed deadlines).

Because of the foregoing, the Court is left with only Ben-Yisrayl's *pro se* petition for habeas corpus to discern his position regarding his claims. Nevertheless, given the Court's review of his claims and the record, no substantial injustice results from the Court's decision with respect to Ben-Yisrayl's motion to file a reply brief.

The Court notes, however, that in the proposed reply brief supporting his motion, Ben-Yisrayl informed the Court that he is abandoning certain claims. Even though briefing on this matter remains closed, the relinquishment of claims can be done wholly apart from the briefing process. The Court will thus permit Ben-Yisrayl to abandon claims 1, 4, 5, and 6 that are raised in his petition, as there is no benefit in adjudicating claims on the merits that the petitioner himself no longer wishes to pursue. The Court turns now to the parties' arguments regarding the remaining two claims.

**B.**    **Intentional Destruction of Evidence**

Ben-Yisrayl asserts that his due process rights were violated because the State "knowingly and intentionally destroyed potentially exculpatory evidence in violation of a standing [state] court Order requiring said evidence to be preserved." (Filing No. 1 at 7.) The facts underlying this claim are not in dispute. During Ben-Yisrayl's initial post-conviction proceedings in 1994, the presiding post-conviction judge ordered that all evidence collected during the investigation of Ben-Yisrayl's case must be preserved. However, Ben-Yisrayl's request at that time for access to certain evidence to perform further DNA testing was denied. (*See* Filing No. 42-28 at 2.) His post-conviction proceedings ended at the trial level in 1996, but the appeals from those proceedings were not concluded until 2000. *See Ben-Yisrayl II*, 738 N.E.2d 253. The Property Section of the Indianapolis Police Department destroyed the evidence in May 1999, while the appeal was still pending. (*See* Filing No. 42-28 at 18.) As acknowledged by the respondent, Ben-Yisrayl was not

9

made aware of this until his resentencing was pending in early 2008.  (*See* Filing No. 42 at 13.)

During resentencing proceedings, Ben-Yisrayl again requested certain evidence so that he could

perform further DNA testing, and it was at this time it was discovered that the relevant evidence

had been destroyed.  The parties dispute whether Ben-Yisrayl's due-process claim is procedurally

defaulted and whether it has merit.  The Court addresses both of these questions in turn.

### 1.   Procedural Default

Ben-Yisrayl acknowledges that he only raised this claim in his unauthorized successive

post-conviction petition and that it was therefore not decided on the merits by the Indiana courts.

The respondent argues that, because of this, the claim is procedurally defaulted.  Ben-Yisrayl

maintains that this claim was not known to him at the time he filed his direct appeal during his

initial post-conviction proceedings, which means he did not have an opportunity to raise it in state

court.

"[F]ederal courts will not review a habeas petition unless the prisoner has fairly presented

his claims throughout at least one complete round of state-court review, whether on direct appeal

of his conviction or in post-conviction proceedings."  *Johnson*, 786 F.3d at 504 (citation and

quotation marks omitted).  However, procedural default only occurs "when a claim *could have*

*been* but was not presented to the state court and cannot, at the time that the federal court reviews

the habeas petition, be presented to the state court."  *Resnover*, 965 F.2d at 458 (emphasis added).

The foregoing facts make clear that Ben-Yisrayl could not have raised his destruction of

evidence claim on direct appeal or during his initial post-conviction proceeding, and the Indiana

courts denied him the opportunity to have it adjudicated in a subsequent post-conviction

proceeding.  The respondent admits that Ben-Yisrayl was unaware of the fact that the evidence

was destroyed until at least early 2008, which is long after his post-conviction proceedings had

concluded.   Accordingly, he could not have presented this claim to the Indiana courts, which precludes it from being barred by procedural default. *See Resnover*, 965 F.2d at 458.  Accordingly, the Court must review the merits of this claim *de novo*. *See Pruitt*, 788 F.3d at 263.

### 2.    Merits

The Supreme Court, in *California v. Trombetta*, 467 U.S. 479 (1984), and *Arizona v. Youngblood*, 488 U.S. 51 (1988), established that:

> the destruction of potentially exculpatory evidence violates the defendant's right to due process if (1) the State acted in bad faith; (2) the exculpatory value of the evidence was apparent before it was destroyed; and (3) the evidence was of such a nature that the petitioner was unable to obtain comparable evidence by other reasonably available means.

*McCarthy v. Pollard*, 656 F.3d 478, 485 (7th Cir. 2011).  However, the Supreme Court has rejected the proposition that a state's denial of access to evidence during a post-conviction proceeding so that further testing may be performed on the evidence violates due process. *See District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009).

Ben-Yisrayl's due-process claim is not that he "did not receive a fair trial because of the concealment of exculpatory evidence known and in existence at the time of that trial," which would state a viable due-process claim under *Brady v. Maryland*, 373 U.S. 83 (1963). *See Whitlock v. Brueggemann*, 682 F.3d 567, 587-88 (7th Cir. 2012).  Instead, he argues that the State's destruction of "potentially exculpatory evidence" denied him the opportunity to perform further DNA testing on that evidence.  (*See* Filing No. 1 at 7-8; Filing No. 42-28 at 2-3.)  At the time of his request for further testing, only Ben-Yisrayl's resentencing was pending, and his guilt could only be challenged via further post-conviction proceedings.  (*See* Filing No. 42-28 at 19-21.)  Thus, as in *Osborne*, Ben-Yisrayl was not entitled to "the opportunity to collect and submit entirely new, and he hoped exculpatory, evidence," since *Brady* does not require states "to allow the defendant

access to these new tests [when] the defendant had already been 'proved guilty after a fair trial.'"

*Whitlock*, 682 F.3d at 587-88 (quoting *Osborne*, 557 U.S. at 68).  Accordingly, because Ben-Yisrayl had no constitutional right to conduct further DNA testing on the "potentially exculpatory" destroyed evidence after he had been found guilty, he is not entitled to habeas relief on this basis.[3]

In the alternative, even if Ben-Yisrayl had a due-process right to test the potentially exculpatory evidence at the time of his resentencing, he would still not be entitled to habeas relief. To be entitled to such relief, Ben-Yisrayl would have to show that, in destroying the evidence, "(1) the State acted in bad faith; (2) the exculpatory value of the evidence was apparent before it was destroyed; and (3) the evidence was of such a nature that the petitioner was unable to obtain comparable evidence by other reasonably available means."  *McCarthy*, 656 F.3d at 485.  Ben-Yisrayl fails to even attempt to show that these three factors are met.

First, a finding of bad faith "turns on 'the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.'"  *Id.* at 486 (quoting *Youngblood*, 488 U.S. at 57 n.*).  The mere fact that the evidence was destroyed in violation of a state court order—the only evidence of bad faith to which Ben-Yisrayl points—does nothing to demonstrate the State's knowledge of the exculpatory value of the evidence when it was destroyed.  But even if this was sufficient to demonstrate bad faith, Ben-Yisrayl has not carried his burden with respect to the second factor.  There is no evidence that the exculpatory value of the evidence was apparent before it was destroyed, given that Ben-Yisrayl needed to conduct further tests on the evidence to *determine* whether the evidence was indeed exculpatory.  The mere possibility that the evidence

---

[3] The Court notes that habeas relief cannot be awarded simply because a state court order to preserve the evidence in question may have been violated by the destruction of the evidence.  This is because relief pursuant to § 2254 is not available for violations of state law or state procedures; it is available only for violations of federal law.  *See Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) ("[E]rrors of state law in and of themselves are not cognizable on habeas review.  The remedial power of a federal habeas court is limited to violations of the petitioner's federal rights.") (citation omitted).

would be exculpatory is insufficient to make the necessary showing.  *See id.* at 485-86 ("[T]he possibility that [the evidence] *could* have exculpated [the petitioner] *if* preserved or tested is [insufficient].") (emphasis added).  For these reasons, Ben-Yisrayl is not entitled to habeas relief on this claim.

**C.**   **Ineffective Assistance of Counsel During 2010 Resentencing**

Ben-Yisrayl contends that his counsel during his resentencing in 2010 provided ineffective assistance.  Because the respondent argues that this claim is procedurally defaulted, the Court will address that contention first before turning to the merits.

**1.**   **Procedural Default**

The respondent argues that this claim is procedurally defaulted because it was never properly raised in the Indiana courts.  Like his destruction of evidence claim, Ben-Yisrayl raised this claim in his application for authorization to file a successive post-conviction petition, which was denied by the Indiana Court of Appeals.  Ben-Yisrayl argues that he was thus denied the only opportunity he had to raise this claim, given that his initial post-conviction proceedings were completed long before the resentencing in 2010 during which counsel allegedly rendered ineffective assistance.

Unlike his destruction of evidence claim, this claim is procedurally defaulted.  Again, procedural default occurs "when a claim *could have been* but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court."  *Resnover*, 965 F.2d at 458 (emphasis added).  Indiana allows ineffective assistance of counsel claims to be raised on direct appeal or during post-conviction proceedings. *See Jewell v. State*, 887 N.E.2d 939, 941 (Ind. 2008) ("A criminal defendant claiming ineffective assistance of trial counsel is at liberty to elect whether to raise this claim on direct appeal or in post-conviction

proceedings."). Therefore, Ben-Yisrayl could have, but did not, raise on direct appeal from the resentencing court the claim that his sentencing counsel rendered ineffective assistance during his 2010 sentencing. *See Ben-Yisrayl V*, 939 N.E.2d 130, 2010 WL 5135369, at *1. For this reason, Ben-Yisrayl's ineffective assistance of counsel claim is procedurally defaulted.[4] *See Resnover*, 965 F.2d at 458. Although Ben-Yisrayl's ineffective assistance of counsel claim is procedurally defaulted, the Court will proceed to address it on the merits as an alternative basis to deny relief.

2. **Merits**

A defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984). For a petitioner to establish that "counsel's assistance was so defective as to require reversal," he must make two showings: (1) that counsel rendered deficient performance that (2) prejudiced the petitioner. *Id.* With respect to the performance requirement, "'[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688); *see Campbell v. Reardon*, 780 F.3d 752, 762 (7th Cir. 2015) ("The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."). "To establish prejudice, [the petitioner] 'must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Campbell*, 780 F.3d at 769 (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)). Because the Indiana courts did not address this claim on the merits, the Court reviews it *de novo*. *See Pruitt*,

---

[4] The Court notes that different counsel represented Mr. Ben-Yisrayl at sentencing and on direct appeal, *see Ben-Yisrayl V*, 939 N.E.2d 130, 2010 WL 5135369; Filing No. 42-28 at 33-34, so there was no concern that appellate counsel had a conflict of interest in raising an ineffective-assistance-of-counsel claim.

788 F.3d at 263 ("If no state court has squarely addressed the merits of a habeas claim, [the Court] review[s] the claim *de novo* under the pre-AEDPA standard of 28 U.S.C. § 2243.").

Ben-Yisrayl argues that his resentencing counsel provided ineffective assistance because counsel "made absolutely no attempt to bring before the sentencing court" the fact that allegedly exculpatory DNA evidence was destroyed by the State, and instead of highlighting this fact, filed only a two-page sentencing memorandum. (Filing No. 1 at 9-10.) The respondent contends that there is no evidence that the destroyed DNA evidence was exculpatory, and in any event, Ben-Yisrayl ignores the efforts counsel made at resentencing by presenting numerous letters of support and calling seven witnesses who testified as to Ben-Yisrayl's character. (Filing No. 42 at 18.)

Ben-Yisrayl has failed to demonstrate that his sentencing counsel provided ineffective assistance. First, as to his counsel's failure to raise the destruction of the allegedly exculpatory DNA evidence, it was not deficient performance to not raise this issue during resentencing. The Indiana Supreme Court remanded the case to the trial court only for purposes of resentencing Ben-Yisrayl on the murder count. *See Ben-Yisrayl IV*, 908 N.E.2d at 1233; *see also* Filing No. 42-28 at 21. In his application to file a successive post-conviction petition, Ben-Yisrayl himself acknowledged that the resentencing judge "ruled that no issues regarding the destruction of the evidence were relevant to the resentencing." (Filing No. 42-28 at 3.) Even though he now contends that this issue should have been raised at resentencing, his previous comments correctly reveal otherwise. The DNA testing that Ben-Yisrayl wished had been done is a matter that relates to his guilt, not to the sentence that is warranted once guilt is determined. Thus, the Court cannot conclude that counsel's decision not to address facts relating to guilt at the sentencing proceeding "amounted to incompetence under prevailing professional norms," and thus constituted deficient performance. *Campbell*, 780 F.3d at 762.

For this same reason, Ben-Yisrayl cannot show that his counsel's failure to raise the issue of the destroyed evidence prejudiced him.  Since the destroyed evidence was relevant only to the question of guilt, not as to the appropriate sentence, Ben-Yisrayl was not prejudiced by this failure. In other words, Ben-Yisrayl cannot show that, had counsel raised an issue irrelevant to sentencing, there was a "reasonable probability . . . the result of the [sentencing] proceeding would have been different." *Id.* at 769.

Second, as to Ben-Yisrayl's criticism that his counsel only filed a two-page sentencing memorandum, criticism of brief length alone is insufficient to demonstrate that counsel's performance was deficient.  "[T]here is no correlation between the length of a brief and its quality." *Nguyen v. Reynolds*, 131 F.3d 1340, 1351 (10th Cir. 1997); *see id.* (rejecting an ineffective assistance of counsel claim predicated on the argument that counsel's brief was too short). Moreover, the Court must measure "the totality of counsel's performance" in determining whether it was deficient, "and will not take any of his actions out of context in order to ascertain whether they are, by themselves, ineffective," *Kavanagh v. Berge*, 73 F.3d 733, 735 (7th Cir. 1996), yet this is precisely what Ben-Yisrayl asks this Court to do.  For example, Ben-Yisrayl ignores the fact that resentencing counsel presented the testimony of seven witnesses regarding his character. Further, the record shows that resentencing counsel made an impassioned argument to the court on his client's behalf.  Having not addressed how the short sentencing memorandum constituted deficient performance in light of the other efforts counsel made on Ben-Yisrayl's behalf at sentencing, Ben-Yisrayl has not carried his burden of demonstrating that resentencing counsel's performance was deficient, let alone that it prejudiced him.

For all of the reasons detailed above, Ben-Yisrayl is not entitled to habeas relief on this ground.

16

## IV. <u>CONCLUSION</u>

"[H]abeas corpus has its own peculiar set of hurdles a petitioner must clear before his claim is properly presented to the district court."  *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 14 (1992) (O'Connor, J., dissenting) (internal citations omitted).  In this case, Ben-Yisrayl has encountered the hurdle of the doctrine of procedural default as to one claim.  He has not shown the existence of circumstances permitting him to overcome this hurdle, although it is clear in any event that the claim lacks merit.  As to the claim not barred by procedural default, this Court has carefully reviewed the state record in light of that claim, but Ben-Yisrayl has not demonstrated that he is entitled to habeas relief.

Ben-Yisrayl's Petition for a Writ of Habeas Corpus (Filing No. 1) is therefore **DENIED.** Ben-Yisrayl's motion for leave to file a belated reply brief (Filing No. 50) is **DENIED**.  Judgment consistent with this Entry shall now issue.

## <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Ben-Yisrayl has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  The Court therefore **DENIES** a Certificate of Appealability.

**SO ORDERED.**

Date:  9/18/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

17

DISTRIBUTION:

Michael K. Ausbrook
mausbrook@gmail.com

James Blaine Martin
OFFICE OF THE INDIANA ATTORNEY GENERAL
james.martin@atg.in.gov